CITIES SERVICE COMPANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 67 Civ. 4606 (CHT).

United States District Court,
S. D. New York.

Jan. 16, 1978.

Thomas E. Tyre, New York City, for
plaintiff; James W. Robinson, Victor K.
Kulp, Cities Service Co., Tulsa, Okl., of
counsel.

Robert B. Fiske, Jr., U. S. Atty. for the
Southern District of New York, New York

City, for defendant; Samuel J. Wilson, Frederick P. Schaffer, Asst. U. S. Attys., New York City, of counsel.

## OPINION

TENNEY, District Judge.

This is an action pursuant to Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C. § 7422, and 28 U.S.C. § 1346(a)(1) for refund of income taxes paid by plaintiff for the calendar years 1953 and 1954. Over the past decade it has been before this Court on several prior occasions: *Cities Service Co. v. United States*, 316 F.Supp. 61 (S.D.N.Y. 1970) (Mansfield, J.); 330 F.Supp. 421 (S.D. N.Y.1971) (Wyatt, J.); 362 F.Supp. 830 (S.D.N.Y.1973) (Tenney, J.). It is currently before this Court pursuant to the decision of the Court of Appeals for the Second Circuit, affirming the decision of this Court in part and reversing and remanding in part. 522 F.2d 1281 (2d Cir. 1974), *cert. denied*, 423 U.S. 827, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975).

On April 28, 1977 this Court conducted a bench trial of this matter pursuant to that remand. Inasmuch as defendant believed that the stipulation of the parties entered into on remand (Pretrial Order ¶ III(a))— that "the fair market value of plaintiff's 3%, thirty year sinking fund debentures was $105,355,293 at the time of their issuance in exchange for plaintiff's outstanding preferred and preference stocks"—answered the only factual question remaining on remand, defendant introduced no evidence at the trial. Plaintiff, electing to disregard the prior holdings in this case, called an expert in financial analysis and securities, who testified that in the financial community the consideration a corporation receives for a security is its "issue price" and that in the case where property is received instead of cash, the issue price is the value of the property received. (Tr. 10).[1] Plaintiff's other witness, a member of its Tax Department, identified two forms filed with its 1953 and 1954 tax returns.

Each was a Form 982 indicating plaintiff's election to reduce the basis of property in lieu of reporting cancellation of indebtedness income in a specified amount.

The Court will not burden the reader with a detailed discussion of the factual background of this dispute, since it has been fully covered in the prior decisions hereinbefore cited. In brief, the claim for refund arises from a dispute between plaintiff and the Internal Revenue Service ("IRS") concerning the proper tax treatment in subsequent years of a 1947 exchange by plaintiff, an accrual basis taxpayer utilizing a calendar tax year, of all of its outstanding preferred and preference stocks for its 3% thirty-year maturity, sinking fund debentures. The aggregate principal amount of the debentures issued on May 28, 1947 in exchange for its preferred and preference stocks was $115,246,950.

During the taxable year ended December 31, 1953, plaintiff retired $1,519,500 in principal amount of said debentures through open market purchases at a total price of $1,398,357.39.

During the taxable year ended December 31, 1954, plaintiff retired $1,805,900 in principal amount of said debentures through open market purchases at a total price of $1,786,569.02.

It is the question of the proper corporate income tax treatment of these open market purchase retirements of its debentures by plaintiff which divides the parties herein.

Since plaintiff persists in arguing issues which one would have thought had been determined by the prior decisions in this case, it is necessary to review briefly those decisions establishing the law of this case.

Initially the Government moved for summary judgment on the theory that plaintiff had suffered no loss on the exchange and any loss incurred was not deductible as "discount" within the meaning of the applicable regulation. *Cities Service Co. v. Unit-*

---

1. Reference is to the transcript of the April 28, 1977 trial herein. This same expert previously testified in this case by means of an affidavit dated January 27, 1970 and by oral testimony at the trial of this case on July 18, 1972.

*ed States*, 316 F.Supp. at 63.[2] Judge Mansfield rejected defendant's arguments and found instead: (1) that the corporation received less consideration in the 1947 exchange than it gave up to the preferred and preference stockholders, *id.* at 69; (2) that the excess of value given over value received was loss or discount, *id.* at 71–72; (3) that the minimum value plaintiff could claim to have received for its debentures is the original consideration it received when it issued the preferred and preference stocks it had exchanged for its debentures, *id.* at 72; and (4) that a trial was necessary to determine the amount, if any, by which the value of its preferred and preference stocks to plaintiff exceeded the original consideration received, *id.* at 72–73, and once the value of the shares to plaintiff had been determined, any refunds due it could be determined by simple mathematical calculation. *Id.* at 74.

Thereafter, the Government again moved for summary judgment on the theory that the reorganization proceeding[3] within which plaintiff had issued its debentures in exchange for its preferred and preference stocks had involved a judicial determination that the value of the debentures was equivalent to the value of the stocks for which they were exchanged. From this premise the Government concluded that the value of the debentures was equal to the value of the preferred and preference stocks and therefore plaintiff had incurred no discount on the exchange. Judge Wyatt rejected the Government's argument, finding that the issue was foreclosed by Judge Mansfield's prior decision. 330 F.Supp. at 423.

The case was then tried before this Court on the one remaining issue framed in Judge Mansfield's order:

". . . the sole factual question to be resolved . . . being the value to plaintiff of the preferred and preference shares received by it in exchange for the issuance of its 3% Thirty Year Sinking Fund Debentures ('the Bonds') on May 27, 1947; and

". . . that . . . the bonds shall be deemed issued at a price equal to the value to plaintiff of the preferred and preference stocks received in exchange for their issuance on May 27, 1947; and

". . . that . . . the value of those shares to plaintiff shall be no less than $45,323,846, the value of the consideration originally received for their issuance . . . ."

Order of February 11, 1972, *quoted in* 362 F.Supp. at 831. This Court found that the value of the preferred and preference stocks received by plaintiff in exchange for its debentures was their market value as adjusted to eliminate the influence of the impending exchange to arrive at the fair market value of the exchanged stock—$86,-313,600. *Id.* at 838.

An appeal from the decision of this Court was taken by the defendant and plaintiff cross-appealed. The decision of the court of appeals affirmed this Court's decision in part and reversed and remanded in part. The court of appeals approved of the decision that tax deductible debt discount can be incurred in a corporation's exchange of its bonds for its own preferred stocks. 522 F.2d at 1286.

However, the court of appeals, after analyzing the decision of the Supreme Court in *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974), rendered subsequent to this Court's decision, took a different view of how the additional cost of capital arising from the exchange, discount, should be calculated, concluding that the question to be answered "in order to measure debt discount, is what was the market value of the debentures at the time of the exchange, rather than the value to Cities of the preferred it received." 522 F.2d at 1290. The court also found that the *National Alfalfa* decision indicated that the value of the preferred was not relevant

---

**2.** Hereinafter citations without reference to the case name will refer to the prior decisions in this case.

**3.** *In re Cities Service Co.*, 71 F.Supp. 1003 (D.Del.1947).

where the exchange was insulated from normal market forces and that debt discount, if any, has to be measured against the market price and value to the corporation of the debentures had they been sold upon the open market. *Id.* at 1290. The court noted that the original consideration received by plaintiff on the exchange was not the figure to be used in determining debt discount except as a minimum. *Id.* n. 15. In summing up the duty of this Court on remand the court of appeals said:

> The amount of debt discount must be determined by reference to a market evaluation and not a private transaction. The issue for determination by the district court here is that indicated by the Court in *National Alfalfa* :

> > "[T]he market price and value to the corporation of the debentures in question had they been sold upon the open market." 417 U.S. at 148, [94 S.Ct. 2119.]

> Accordingly, we reverse and remand to the district court for determination of this issue.

*Id.* at 1290.

As guidance to this Court the court of appeals indicated that the market value of the debentures at the time of their issuance in this case would be somewhere between the May 27, 1947 aggregate closing price of the preferred and preference stocks, $104,-827,450, and the aggregate closing price of the debentures on the date of their issuance, $105,883,135. *Id.* at 1290–91.

Subsequent to the remand the parties engaged in discussions seeking resolution of the case. Although these were ultimately unsuccessful, the parties did agree that the fair market value of plaintiff's 3%, thirty year, sinking fund debentures was $105,-355,293 at the time of their issuance in exchange for plaintiff's preferred and preference stocks and that the amortizable original issue discount was $9,891,657. (Pretrial Order ¶¶ III(a) & (c)).

Nevertheless, plaintiff now contends that the issuing price of its debentures, for the purpose of calculating its deductions for 1953 and 1954, is $45,323,846, the fair market value of the cash and properties originally paid in upon issuance of the preferred and preference stock. This contention is clearly foreclosed. Judge Mansfield flatly rejected it, reasoning that while the original cost price of the shares constituted a floor or minimum for determining plaintiff's loss or discount, it was not also a ceiling or maximum. He concluded that the issuing price of the debentures could be determined only after consideration of all relevant data bearing upon the fair market value of the shares at the time of the exchange. 316 F.Supp. at 72–73. This Court undertook such a consideration in the first trial and determined that the fair market value of those shares received on the exchange was $86,313,600. While the court of appeals did not dispute the correctness of that figure, it held that the fair market value of the debentures, rather than the fair market value of the shares at the time of the exchange, was the basis for determining the issuing price of the debentures. In light of the foregoing, the law of this case is that the issuing price of the debentures is $105,355,-293.

Plaintiff's argument that the "issuing price" of the debentures is different depending on whether we are computing original issue discount or loss upon retirement of debt is contrary to the applicable regulation, is foreclosed by the decision of the court of appeals and is unsupported by case law. Needless to say, on its appeal plaintiff never suggested such a distinction.

There is no dispute that the regulation governing the tax treatment to be accorded to the repurchase of bonds subject to a debt discount in 1953 and 1954 is Treas.Reg. 118, ¶ 39.22(a)–17(c), which provides as follows:

> If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. If the corporation purchases any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or

over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year. If, however, the corporation purchases any of such bonds at a price less than the issuing price plus any amount of discount already deducted, the excess of the issuing price, plus any amount of discount already deducted (or of the face value minus any amount of discount not yet deducted), over the purchase price is gain or income for the taxable year.

What plaintiff proposes by its argument is to interpret the words "issuing price" in the second and third sentences to be the original consideration paid in for the preferred and preference shares exchanged while conceding that the issuing price for determining the "discount" in the first sentence is the fair market value of the debentures when issued. This is an improper reading both as a matter of construction and in light of the purpose of the regulation.

■ The parenthetical contained in the second and third sentences of the regulation makes clear that for the purpose of determining the adjustment to the amortized discount deduction occasioned by the retirement of debt, the issuing price of the debentures plus any amount already deducted is equal to their face value minus any amount of discount not yet deducted. Since the amount of the net discount (and hence the amortized deductions) is determined by reference to the issuing price as the fair market value of the debentures, the same definition of the issuing price must be used in making the adjustment for retirement of the debentures in order for the equivalency contained in the regulation to be true.

■ The purpose of Treas.Reg. 118, ¶ 39.22(a)–17(c) leads to the same conclusion. Original issue bond discount is the difference between the value of the bonds when issued and their face value. The first sentence of the regulation deals with the amortized deductions to be taken for such net discount. Where, however, the bonds are retired at a price other than their issuing price plus discount already deducted, an adjustment must be made with respect to the deductions in that year to correct for the original assumption that the bonds would be retired at their face amount when due. As the court of appeals noted:

> The regulations provide not only for annual amortization of debt discount, but also for an adjustment in the year of retirement by repurchase in order to close out the artificial accounting charge allowed for debt discount amortization.

522 F.2d at 1292. The second and third sentences of Treas.Reg. 118, ¶ 39.22(a)–17(c) accomplish that adjustment. If, as plaintiff contends, the words "issuing price" are not interpreted in a manner consistent with the way in which the net discount was calculated in the first instance, that function is vitiated.

The Court accordingly finds, with the exception of the deduction of $15,337.94 of gain realized upon the retirement of plaintiff's debentures in 1953 (which defendant concedes to be improper), that defendant's computations in accordance with Reg. 118 are correct and that the allowable deduction for bond discount is $222,047.73 for 1953 and $317,984.79 for 1954. Submit judgment in accordance herewith.